United States District Court
Southern District of Texas
**ENTERED**
June 29, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CRISTOBAL H. S. [1],<br>Petitioner, | §<br>§ | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:26-cv-547 |
| | § | |
| TODD BLANCHE, *et al.*,<br>Respondents. | §<br>§ | |

**REPORT AND RECOMMENDATION**
**TO DENY PETITIONER'S HABEAS PETITION**

Before the Court is Cristobal H. S.'s "Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241" (Dkt. No. 1) ("Petition"); Respondents' "Response to Petition for Writ of Habeas Corpus and Motion to Dismiss" (Dkt. No. 9); and "Petitioner's Reply to Respondents' Motion to Dismiss" (Dkt. No. 11). For the following reasons, it is recommended the Court deny the petition.

Petitioner is a citizen of Mexico currently detained by Immigration and Customs Enforcement (ICE) at the El Valle Detention Center in Willacy County, Texas. Dkt. No. 1 at 3. In February 2019, Petitioner was ordered removed to Mexico but was granted withholding of removal to Mexico under the Convention Against Torture. Dkt. No. 1 at 3; Dkt. No. 9 at 2. ICE detained Petitioner on or about May 12, 2026. Dkt. No. 1 at 3. Petitioner argues that he is detained "despite the absence of any identified country of removal, any individualized evidence demonstrating that removal is realistically achievable, or any concrete indication that removal will occur within the reasonably foreseeable future." Dkt. No. 1 at 5. The Government argues that Petitioner cannot yet "invoked *Zadvydas* because he has not been detained longer than the constitutionally permissible period." Dkt. No. 9 at 4.

[1] Due to significant privacy concerns in immigration cases and noting that judicial opinions are not subject to Federal Rule of Civil Procedure 5.2, any opinion, order, judgment, or other disposition in this case will refer to the petitioner only by first name and last initial.

## I. Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A court has "an independent obligation to determine whether subject-matter jurisdiction exists," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006), and, if it "determines…that it lacks subject-matter jurisdiction," it "must dismiss the action," Fed. R. Civ. P. 12(h)(3). One "essential component[]" of "federal subject-matter jurisdiction" is "ripeness." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). For a court to exercise jurisdiction, then, the case "must be ripe for decision, meaning that it must not be premature or speculative." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002).

## II. Discussion

Because Petitioner has not been detained for over six months since his removal order became final, his claim is premature.[2]

Once a removal order becomes final,[3] § 1231 authorizes detention of the alien to effectuate removal under two provisions. In the first 90 days (otherwise known as the "removal period"), 8 U.S.C. § 1231(a)(1), the "Attorney General shall detain the alien" under 8 U.S.C. § 1231(a)(2). Once the removal period ends, the source of authorization shifts to § 1231(a)(6), which states that the alien "may be detained" by the Attorney General "beyond the removal period." 8 U.S.C. § 1231(a)(6). To ensure § 1231(a)(6) would not lead to constitutionally excessive detention, the Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001) construed it to have an implied limit: authorization of detention under § 1231(a)(6) would run out when continued detention "exceeds a period reasonably necessary to secure removal" and removal "is no longer reasonably foreseeable." *Zadvydas*, 533 U.S. at 699. The Court, however, also understood that a reasonableness standard, standing alone, would risk too

[2] The Court notes that the Government states Petitioner was not detained when he was granted withholding of removal on February 5, 2019.

[3] A removal order becomes "administratively final" under 8 U.S.C. § 1231(a)(1)(B)(i) upon "(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

much judicial interference with the Executive's "primacy in foreign policy matters." *Id.* at 701. The Court thus found it "practically necessary" to "limit" its new standard by recognizing a "presumptively reasonable period of detention" of "six months." *Id.*

Pieced together, the *Zadvydas* framework slots claims challenging post-final-removal-order detention into two phases:[4] 1) a six-month period where the statute constitutionally authorizes detention (and *Zadvydas* claims are thus not viable); and 2) a period "after that," in which the alien can seek conditional release under *Zadvydas* "if he can demonstrate there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Clark v. Martinez*, 543 U.S. 371, 378 (quoting *Zadvydas*, 533 U.S. at 701). If a petitioner seeks release from detention in the first phase—the presumptively reasonable period—his or her claim is not yet ripe.[5] *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011); *see also Kakhidze v. Venegas*, No. 1:25-cv-00136, 2025 WL 2412854, at *3 (S.D. Tex. July 30, 2025), *report and recommendation adopted*, 2025 WL 2411229 (S.D. Tex. Aug. 20, 2025).

---

[4] Some district courts in this circuit remain skeptical of this tidy two-phase scheme. *See, e.g., Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703 (S.D. Tex. 2020); *Villanueva v. Tate*, 801 F. Supp. 3d 689 (S.D. Tex. 2025). They, like Petitioner, suggest that *Zadvydas* prescribes a (rebuttable) presumption of reasonableness during those first six months—and does not, in effect, proscribe claims brought before that period elapses. *See, e.g.*, *Villaneuva*, 801 F. Supp. at 703. Admittedly, *Zadvydas* is not precise about what its presumption means for the first six months. *Zadvydas*, 533 U.S. at 701. But the formulation offered by the Court in and after that case only contemplates petitioners proving their detention is unreasonable after the six-month period ends. *Id.* at 701 ("*After* this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing") (emphasis added); *Clark*, 543 U.S. at 378 ("*after* that [presumptive period], the alien is eligible for conditional release if he can demonstrate…") (emphasis added); *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (same). The Fifth Circuit, though not settling the issue, has issued strong signals of its own. It has described the timing of *Zadvydas* claims in the same terms, *see Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 757 (5th Cir. 2008), approved of district courts dismissing *Zadvydas* claims as "premature" when made during the presumptive period, *Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) (per curiam); *Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) (per curiam), and itself found a *Zadvydas* claim to be "premature" for the same reason, *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

[5] Whether a claim of unreasonably prolonged detention is offered in statutory or constitutional terms, the result is the same: it is "presumptively *constitutional* for an alien to be detained for six months after a final order of removal." *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011) (emphasis added), and a constitutional challenge to prolonged detention fails unless it meets the standard set by *Zadvydas*, *see Andrade v. Gonzales*, 459 F. 3d 538, 543 (5th Cir. 2006).

Petitioner has been detained for about 45 days at the time this Report and Recommendation is issued. For this reason, the Court finds that the 180-day presumptively reasonable period has not yet elapsed, and, thus, the *Zadvydas* claim in this Petition is not yet ripe. Consequently, the Court lacks subject matter jurisdiction to hear this case in its current form.[6]

## III. Recommendation

It is therefore recommended that the Court (1) **DENY** the Petition (Dkt. No. 1), **DISMISS** AS MOOT the Government's Motion to Dismiss for Failure to State a Claim (Dkt. No. 9), and (3) **DIRECT** the Clerk of Court to close the case.

[6] Because dismissal for lack of subject matter jurisdiction is without prejudice, Petitioner may file another habeas petition once his claims are ripe. *See Ruiz v. Brennan*, 851 F. 3d 464, 472 (5th Cir. 2017).

## IV. Notice to the Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge assigned to the instant case. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on June 29, 2026.

Karen Betancourt

Karen Betancourt
United States Magistrate Judge